Good afternoon, Your Honors, may it please the Court, I'm Josh Koppel for the Defendants. I'd like to reserve seven minutes for rebuttal. Plaintiffs challenged the President's exercise of discretionary national security authority expressly granted by Congress. Their claims fail for numerous reasons, and the District Court committed multiple errors in the course of entering the preliminary injunction under review. I'd like to start where this Court always must, with jurisdiction. The District Court lacked jurisdiction because Congress created an exclusive statutory review scheme under which claims arising under the Federal Service Labor Management Relations Statute have to go to the FLRA, with direct review then in the Court of Appeals. There's no doubt the plaintiff's claim arises under the FSLMRS, because they challenged the exercise of authority granted to the President under that statute, and resolving their claim will require measuring the actions of the President against the requirements of the statute. That's exactly the type of suit that Congress wanted to be directed to the FLRA. And there are several ways that the unions could raise their claims in front of the FLRA. Perhaps most simply, they can raise their arguments in cases already pending before the FLRA. The FLRA, in pending cases, has issued orders to show cause why actions involving agencies that are the subject of this exclusion order should not be dismissed for lack of jurisdiction. Plaintiffs could respond by saying those cases shouldn't be dismissed because, in their view, the executive order is invalid. And the FLRA, in order to determine its jurisdiction, would then have to resolve that claim. So that's just the simplest way that plaintiffs can present their argument to the FLRA, and whatever the FLRA does then, whether it dismisses for lack of jurisdiction, or it sustains plaintiffs' challenge to the executive order, that order will then be subject to judicial review in the Court of Appeals. There are a couple other ways to get to the Court of Appeals, or to get to judicial review, including that plaintiffs could file unfair labor practice claims with the FLRA, or they could raise unfair labor practice claims through the grievance and arbitration process set out in collective bargaining agreements. Is there any sense, from what the FLRA has said about any of these things, that we think the FLRA would believe itself entitled to rule on the challenge here? The FLRA has issued orders to show cause, and I think that if the FLRA were not willing to entertain arguments, it could have just dismissed without giving the parties an opportunity to explain why the FLRA might continue to have jurisdiction. Is the government's position that the FLRA could adjudicate all we have right here on this appeal, these retaliation claims, do you think the FLRA could adjudicate those? So we think that the FLRA would have jurisdiction to adjudicate those. We've got defenses on the merits, certainly about the level of review that could be given to those claims, but jurisdictionally, yes, the FLRA has jurisdiction to review both the statutory claims and the constitutional claims. Elgin addressed something similar. The plaintiffs in Elgin said that their constitutional claims didn't have to be routed through the MSPB, and the Supreme Court rejected that argument, saying that even constitutional claims have to go through the executive statute. I mean, I guess Elgin, though the employees were covered by the statute, there was sort of no dispute about that, whereas here, under the terms of the executive order, they're, at least as of now, outside the statute. So what makes you think that the regime here was meant to include people who are outside the statute, but who want in? So as an initial matter, exclusive statutory review schemes don't always apply only to those that are already within the scheme. Fausto is an example of this. In Fausto, the plaintiffs did not have rights to go to the MSPB, and the Supreme Court still held that their claims couldn't be brought in district court because of the statutory review scheme. But the claim here... But were the people in Fausto at least covered by the regime itself? Because I mean, here, the argument is, we've been taken outside of, you know, just by the terms of the executive order, they're saying this Chapter 71 does not apply to these entities. So the unions here say, okay, well, we're outside of it, so we're outside of the review scheme as well. I don't think that the focus is properly on whether the agencies are within the review scheme, but their claim. Their claim raises a challenge under the FSLMRS, right? They allege that the President has acted ultra-virus in issuing this order because, they allege, his order contradicts the requirements, the terms of the FSLMRS. So that claim is clearly within the statute. And there's a dispute, of course, over the validity of the executive order, and therefore whether the agencies are themselves excluded from the review scheme. But their claim certainly does fall within the statute. I'm happy to, well, maybe it's worth also mentioning- What's the status of this issue in the D.C. Circuit, right? I know this was argued there a couple weeks ago, probably by you. That's right. It was argued on December 15th. The Court of Appeals has ordered supplemental briefing on this jurisdictional question, specifically whether there is yet another mechanism in addition to the three that I the FLRA, and then the case will be right for decision in the D.C. Circuit. What if the FLRA said, you know, we do not believe that we can adjudicate this, and the unions have a disagreement with that? They take it to the Court of Appeals, a Court of Appeals, which could, you know, review whether that was right, I guess. But could the Court of Appeals independently just say, well, we can reach the underlying question? Yes, and the Supreme Court addressed that in Elgin as well. The plaintiffs there said the MSPB wouldn't have authority to review their constitutional claims. The Supreme Court cast doubt on that and said it thought the MSPB probably would have authority to review the claims. But even if it didn't, it said it's not unusual that a Court of Appeals, on review of the agency's decision, will have authority to address constitutional claims that the agency itself couldn't address. And so similarly here, even if the FLRA determines it doesn't have jurisdiction, and even if the Court of Appeals doesn't, decides not to return the case to the FLRA in the first instance, the Court of Appeals would have authority at that point to review plaintiffs' statutory and constitutional claims. Counsel, I have a procedural question for you, aside from jurisdiction. So let's assume for a moment we do have jurisdiction. I'm not saying one way, but just assuming that we do. Procedurally in this case, the next step would be to go back to the district court, whether the preliminary injunction's in place or it's not in place, and it would be, I assume, a trial on the merits for a permanent injunction, if the plaintiffs are still pursuing this case, correct? I think that's... That's the next step. Sorry. Yes. Assuming that the court decides that the district court does have jurisdiction, yes. Right. Okay. So one of the things that concerned me last time this case was, about the plaintiff's case, was the Mount Healthy issue. We talked about that, and there's been additional briefing on that, and I thank the parties for going over that. But the district court, the first time it had this case, never really addressed Mount Healthy at all. So it was hard to apply. I don't know what the standard review would be, something the district court didn't review. But if the case goes back for a permanent injunction trial, and the district court makes findings at that point on Mount Healthy, what would be our standard review if we were to review it if it came back? I think that... So I don't want to get ahead of arguments that we might make at a later stage in the case, but I think that there are not going to be facts that are going to be found in this kind of case. Just looking at briefing in the NTEU case, which was briefed on summary judgment in the District of Columbia, there wasn't a dispute over the facts. The question was what the facts showed and what the facts meant in light of the law. I think that kind of application of law to facts calls out for more of a de novo or abusive discretion standard. Because I think there is some case law in the Mount Healthy sector, I'm asking the other side the same question, that says we review a Mount Healthy determination for some sort of clear error, like it's a factual finding. I think where there's a dispute over the facts, that's correct. But here, where plaintiffs have relied, for example, on the bounds of the executive order itself, on the statements in the White House fact sheet, there's no dispute over what those say. There's no dispute over the bounds of the executive order. The question is really what they mean. For one thing, is the executive order, as plaintiffs allege, so far removed, in their view, from the scope of what is permissible under the statute that some kind of inference could be drawn? That requires construing the statute. And so that's a legal determination, for example, that would be subject to de novo review here. But you would agree, though, that this discussion you and I are having right now, the district court, as far as we know, in terms of what it's put out, has never undertaken this examination. That's correct. And that's a reason to reverse the preliminary injunction in itself, because the district court just applied the incorrect legal standard. I don't think this court needs to get to the Mount Healthy analysis itself, although it probably could if it wanted to. I think it would be enough to just say the district court didn't apply the correct standard for a First Amendment retaliation claim. Therefore, this preliminary injunction should be vacated. But then the next step would be under that would be then they would decide whether they're going to pursue the case and seek the permanent injunction. That's correct.  I mean, again, this is all assuming that there is jurisdiction.  There's other claims. I mean, we have the retaliation claim here right now. But what's the status of the litigation otherwise? I think the district court has basically held the litigation pending this appeal. I don't believe there's been briefing on summary judgment, which would be the next step. Yeah, it looked like from the docket, the district court understandably kind of said time out. That's right. OK. Yeah. Even before turning to the merits, even before the Mount Healthy standard, which again is independent grounds to vacate the preliminary injunction, the district court committed another error with regard to plaintiff's prima facie case. In particular, it failed to distinguish between impermissible retaliatory animus and legitimate considerations of of speech in taking actions related to national security. It failed to defer to the executive branch's predictive judgments and considered evaluations of matters of national security. And it failed to apply a presumption of regularity. So plaintiffs have relied in particular on this White House fact sheet and the district court relied on that as well in granting a preliminary injunction. But as this court explained in the stay order, that preliminary injunction or I'm sorry, that White House fact sheet demonstrates an overarching concern of national security and it identifies how the agencies that are the subject of the executive order play a role in national security, specifically how they have a primary function of national security work and the ways in which the provisions of the FSLMRS have been used to obstruct their national security work. Can I can I ask you to address what standard would apply to the first determination in 7103B1A, and that is the president's determination that the agency or subdivision has a primary function that relates to intelligence, counterintelligence, investigative or national security work. So this primary function prong, I didn't see anything in the briefing addressing that. And I'd like to ask the other side the same question as well. So is there a standard? Is it extra textual? Is it in case law? How are we how are we to review that determination? So I think that the only case law that we have on this is AFSCME versus Reagan, which is basically, which basically says DC Circuit case saying there's a presumption of regularity. And unless it's clear on, you know, from from the executive order, basically that the president didn't make the determinations required by statute, there is a presumption that the president acted in accordance with statute. So the statute is clear. The statute could say that the president may exclude agencies that have a primary function of intelligence, counterintelligence, investigations, national security work if necessary for national security. But the statute says if the president determines and the president determines both 7103B1A and B. So the determination of whether an agency performs national security work is to be made by the president. Congress vests the discretion of the president. And we think that that that exercise of discretion is really not subject to judicial review because the courts aren't in a position to make that determination. It's the president, the executive branch that understands how the agencies function, the national security demands on the government and how and the roles that agencies play in responding to national security. So is it a factual determination or a legal determination? It's a factual determination for the president. And I think it's not something that can be reviewed by the courts. What about Congress's descriptions of various agencies and what they're to do there? I guess we call their enabling acts. Is that does that bear any weight? If Congress has described, for example, the V.A. or GSA or some other entities having a particular function, does that circumscribe the president's determination of whether they have a primary function that relates to national security? I think that's probably informative or could be informative to the president. But I don't want to I don't know exactly how the president was analyzing this and making the determination here. But I think that the president is also focused not just on the enabling statute, but on how the agencies work in practice and the work that they're actually performing, the national security threats at the time that the determination is made, not just at the time that the agency was created. Because I take it then because things could change, something that when something was created 20 years ago, maybe they thought it would just be fun on the Internet. Now they realize it's something different. Absolutely. How how does this bear on the retaliation issue, if at all? I mean, if how much are we reviewing essentially the argument that that may that that's being made that this is potentially excessive, you know, designation of national security functions? How does that relate to the particular claim here? I appreciate the question because I think that the relationship is is fairly minimal, actually. I think that that question is more related to plaintiff's statutory or not statutory ultra-virus claim that the president violated the statute. In terms of the retaliation claim, I think there is some connection because they they contend that violation of the statute is somehow evidence of retaliation. I don't think that's that's quite correct. Even if this court disagrees with the president's determination to make a different determination in the first instance, that doesn't suggest that the president was motivated by by retaliatory animus as opposed to just a different view of what the statute requires. Are there any limiting principles that we could apply to sort of the bounds, the outer bounds of the president's discretion here? I think I asked you this in the previous argument. Plaintiffs make much of the scope of this executive order and that it's orders of magnitude larger than previous executive orders for previous presidents have exempted various agencies or parts of agencies. So here they assert it's about two thirds of the federal workforce. What if it were the entire federal workforce? Is there some principle that guides us? Could the president do that? So, you know, I don't want to concede any authority of the president here. I'm not authorized to do that. I don't think it's beneficial for this court. I think it really depends on the circumstances. If we were on the, you know, in the middle of World War II, for example, if the statute had been in effect and the president determined that all resources of federal government have to be devoted to war, you know, I could see, you know, I wouldn't want to say that at that point the president doesn't have authority to exclude basically the entire federal workforce. I think it's going to depend on the circumstances. And that's really the president's decision to make. I will say that, you know, the plaintiff's focus on two thirds of the federal workforce is, it has to be taken in context. So if you look just at agencies that are kind of very obviously connected to national security, Department of Defense is the largest employer of civilian employees, Veterans Administration, Department of Homeland Security, Department of Justice. If you look at those, I think those agencies by themselves comprise 60 to 70 percent of the federal workforce. And so, you know, there are other agencies here, but they are much smaller in comparison. Unless there are further questions at this point, I'd like to reserve the rest of my time for rebuttal. And we'll go ahead and give him the seven. And then, counsel, if you go over, it's going to be OK. Thank you, counsel. Good afternoon, Ramya Vivendran on behalf of the appellees. The district court's preliminary injunction here was based on a record before it that contained uncontested submissions from the plaintiffs that looked at an executive order that was unprecedented in size and scope and on its face, drew lines that were inconsistent with its purported rationale and expressed statements in an accompanying factsheet that acknowledged that hostile federal unions who were opposed to the president's policy agenda motivated that executive order. The district court's findings with respect to harm, with respect to the statements that were made, are supported by the record and its legal conclusions are consistent with this court's precedent. So its grant of a preliminary injunction was not an abuse of discretion. I want to start with I'll start with jurisdiction and I want to start where the analysis must start, which is with the presumption that district courts have subject matter jurisdiction over the type of federal claims that were brought here. And therefore, there must be a finding of congressional intent that is fairly discernible on the statute to strip the district courts of that jurisdiction. What that means is the test is not, could we come up with some hypothetical pathway by which the claim here could travel through the agency and get to the court of appeals? If that were enough, the Supreme Court's decision in Axon would have come out the other way. Instead, all nine justices agreed that the district court had subject matter jurisdiction over the constitutional claims that were brought in that case, even though the court acknowledged in its opinion that the plaintiffs in Axon could have eventually gotten their claims to a federal court, to a court of appeals through an adverse, to an appeal of an adverse decision through the agency. Instead, what the court said in Axon as to how you must approach the channeling question is the existence of a statutory review scheme isn't enough. The question is whether the particular claim in question is the type of claim that Congress intended to be reviewed in the first instance exclusively through the administrative review scheme. And the court explained that the reason for that is the purpose of the channeling doctrine is that is to give the agency in those circumstances a heightened role over matters it customarily handles and can apply distinctive knowledge to. So here we have a situation where those factors are absent because once the president issued this executive order, the plaintiffs lost the ability to bring disputes against these defendant agencies to the FLRA because neither the plaintiffs nor the defendants are covered parties under the statute. So that's the reality on the ground. We're excluded. The defendants are excluded. Whether the president violated the law when he issued this executive order doesn't change the fact that he issued it and that that order is currently in effect. And what that means is that the plaintiffs are not covered parties. The claims are not covered claims. The defendants are not covered parties. And therefore, we have no access to the Chapter 71 administrative review process. I mean, there is a strange one in the sense that if you were to ultimately prevail and invalidate the order, then your clients would be subject to that process. So essentially, assuming your allegations to be true, you would be, you know, the order is invalid. You actually are part of the process, although your position now is at the moment you're not. Well, at the moment, as a factual matter, we're not. So again, we have no control. We can't change the fact that this executive order unilaterally ourselves, that this executive order, it was issued by the president. It names all of these agencies. It says Chapter 71 doesn't apply anymore. It says unions are no longer the exclusive representative. We don't have standing to bring unfair labor practice charges. Contracts have been terminated. There is no grievance process anymore. Agencies refuse to process this, ignore grievance filings. So these pathways, these are hypothetical pathways that don't exist in reality. And that's where the channeling inquiry is not on, well, let's look at what might happen. Could you, you know, if we were to win on this, well, then maybe you would be able to get to the, to take your claim through the agency and then get an appeal to the Court of Appeals. Instead, we're looking at when Congress set up this administrative review scheme, was the intent that claims of this type would, should be going through that agency? Because we want, because we think the agencies have a unique role to play in evaluating these types of claims. Is this a Thunder Basin or is this basically preceding Thunder Basin in some sense? We think this precedes Thunder Basin because, because of the fact you're dealing with excluded parties. So the FLRA is set up to review disputes brought by covered parties involving the labor relations framework that the parties are operating under. We've been taken outside of that. And so there's no intent for the FLRA to be exercising jurisdiction over non-covered parties. And they've said that in the past before. When they have, in the few occasions where they have, where they've had a matter that involves an agency that's been excluded under 7103B, they've summarily dismissed those matters. They say we lack jurisdiction over agencies that are excluded from the Chapter 71 framework. And even the case, the, one of the cases the defendants cite in their reply brief, the Department of Navy matter, what the FLRA is very explicit on this. It says that when, when you have an agency that has been, that the President has excluded, by issuing an executive order, we are clearly without jurisdiction to process the petition that the union had filed in that case. And so that's what we have here. The President has issued an executive order, and there's no dispute that the defendant agencies fall under that executive order. There are some references in the statute in, to, you know, the provisions of this chapter or purposes of this chapter, things about this chapter. And then the provision we're talking about is obviously in the chapter, the, the President's exercise of authority. So I see some of the government's briefing arguing, well, you know, this is within the chapter, therefore this is covered by these other provisions. How do you address that? Because the, what the, when you look at this section setting up the FLRA and what it, what its authority is and what its function is, it's looking at, it says it, you know, unfair labor practices, disputes over a contractual provisions, representation elections, whether, you know, deciding whether there's majority support to, for a union to be representing the workers there, the procedures for holding those elections. This all comes before that 7103B is whether you're even in this framework to begin with. And so it's not, and, and there is, you know, it's, there is not a single example of where the FLRA has decided whether the President violated the Constitution or violated the law in issuing an executive order excluding an agency. And that, that, so the, so going back to Axon of, the purpose of channeling is to give the agency a heightened role over the matters that it customarily handles, that it can apply distinctive knowledge to. Those are both absent here. And I think even if you go to the next step of looking, so I think this precedes the Thunder Basin, but even if you go to the next step of looking at the Thunder Basin factors, they would also point against channeling here because the meaningful judicial review, which is one of the things that the court has said is one of the most important factors to consider, and, and Axon, what the court said is, it pointed, you know, it described its earlier decision in free enterprise fund as a much more easier, relatively straightforward case because it pointed out that the way that that agency was set up and the way the review procedures worked, the plaintiff's claim in that case might not be able to get to a court of appeals. Here, you know, the government's laid out, well, you could do this, you could do that. So if you could file an unfair labor practice charge with the FLRA, but unfair labor practice charges are not filed with the FLRA, they're filed with the general counsel. That position is vacant right now. And even if someone were there, if the general counsel's counsel chooses not to bring a complaint, if, for example, because they say, I can't entertain this unfair labor practice charge from you because the, because of the executive order excludes all these agencies, that is unreviewable. And that is not something that is subject to judicial review. The defendants say you could file a grievance. You could use the grievance procedure that's in your collective bargaining agreement. Those collective bargaining agreements have been terminated. Those grievances are not being processed. So the, so we have a situation here where you, you do have a circumstance where there might not be meaningful judicial review. And then going to the other two factors, is this something that is wholly collateral? Or is it, and again, Axon explained what does that factor mean? It means you're looking at, you know, is this something that the FLRA, that the agency customarily handles? Not the situation here. They've never handled anything like this. And then you also, is it outside the expertise of the agency? That is the case here as well. This is, the court put it well in Axon where it says agencies know a lot about what is within their statute, but they don't have any distinctive knowledge, more than a district court, with respect to constitutional claims. Turning to the First Amendment analysis. So the panel, when granting the motion, the government's motion to stay, rested on the finding that the president would have taken the same action, even absent the plaintiff's protected speech here, because the executive order, as the panel put it, was based on the perceived impact of union activities and collective bargaining on the sound operation of agencies and subdivisions with national security related missions. That conclusion, however, is not consistent with the evidence that was in the record. Looking at the executive order itself, the executive order does continue to allow union activities and collective bargaining at these national security, you know, purported national security agencies. It's only certain unions who were determined to have the perceived negative impact on that operation. And the fact sheet makes crystal clear as to how that line was drawn, that it is that the unions that will be found to negatively impact national security are the ones who are hostile to the president's policy agenda. That's First Amendment retaliation. It is drawing a line based on indisputably protected speech and petitioning activity. But is the speech essentially the speech of unions acting in their capacity as unions? It's both here. So you have both. So as is laid out in the factual record that was before the district court, the plaintiffs here have been very active in filing lawsuits, challenging various executive actions taken by the president. And those are detailed in affidavits that were before the district court with respect to litigation that multiple pieces of litigation that were ongoing. This executive order actually issued not long after a victory in one of those in one of those cases. There is there's also a public speech. You know, the fact sheet cites to a publication put out by plaintiff AFG, which details public speech and petitioning lawsuits. It's filed lobbying members of Congress town halls that it has held public statements that is made and characterizes those as hostile to the president's agenda as one. And that is that is called it your AFG, the largest federal union, is called out specifically in the White House fact sheet. And this publication is quoted from AFG publication about its First Amendment activity that it was doing to to voice its opposition to various actions that the president took. Let me jump in there because I mean, look, I think you personally I think you've made the case that the president doesn't like these unions. OK, I think you've made the case here. The issue I had was there's a whole malhealthy part which the district court did not analyze, which leaves me in a tough spot because we're we're going to be you're asking us to uphold a preliminary injunction that, in my mind, missed a big part of the analysis. And it's hard for me to justify a preliminary injunction that's. Kind of missed something very important, so I agree with everything you said makes sense. How can I be comfortable with a preliminary injunction that missed a big step now that the government could have done a better job of flagging the issue? Fair enough. But it was in their briefs. They did cite as a walk me through that part, the malhealthy parts where I have the problem. Sure. And I think we have to start with the fact that that piece of the malhealthy, of course, is an affirmative defense that the government has the burden to prove. Right. But when the district court doesn't resolve it at all. So how do we how what do we do in this situation? So I would I would respectfully disagree that the district court did not look at this at all. So in the district court's opinion, it does say that that that the government has not necessarily rebutted the nexus that the causal nexus that the plaintiffs had shown that the district court found that the plaintiffs had made their prima facie case of demonstrating a causal link between that there was retaliatory animus that was motivating this executive order. And and the district court said that was not necessarily rebutted by the government's presentation, which it was the government's burden to make. And while there was a a citation to Mount Healthy in the government's brief, it is one sentence of the government's brief. And it's within. This is not a situation where the government presented their argument as, you know, section one. No. Yeah. There's section two. You know, they they they don't meet their burden, even if they did. It was not it was not presented like that at all. It was part of their argument that we didn't make our prima facie case. And and what the what the district court's opinion does. So, again, there was no evidence presented by the government below. And so the district court is looking at the executive order and the fact sheet. And the district court's order does go extensively go through those two pieces of evidence, which is the only evidence that the government's relying on on appeal. Let me ask you this then. So I'm asking the same question I asked opposing counsel. So what regardless what we do and whether we agree with you or agree with him, assuming there's jurisdiction, the next step would be to pursue a permanent injunction. Correct. Now, is there additional evidence or additional findings that you think the district court could make on this issue? Number one and second, let's say it did. Let's say it did in your favor. There's a lot of what ifs here, but let's assume everything's going your way. What would we review? What would be our standard to review an actual finding on Mount Healthy? Maybe it's going to be bad for you. Maybe it can be good for you. But what is our review at that point? So I think the case law in the circuit, and we cite some of that in our brief, treats the both the prima facie case that the plaintiffs have to show, as well as the affirmative defense of whether, which is the standard is that you have to show that the government official here, the president, would have WNC, WNC, would have taken the same action absent the plaintiff's protected speech. And this circuit has has said in its case law that those are factual questions. There has to be shown by evidence is what this court has said, that the government must show with evidence that it would have taken the same action. And so what other evidence would you intend to bring forward here? Well, I think we have made we have made our showing. I don't know what, if anything, the government would would put forward in support of its affirmative defense, that it would have taken the same action, even absent our speech. The two pieces of evidence that they pointed to that they point to so far are the executive order and the fact sheet, both of which do not demonstrate that the president would have taken the same action because it does draw lines between unions and and says that it's doing so based on whether or not are you a union that's going to work with the president? Those are the words in the fact sheet. So so in terms of what additional evidence would be on the Mount Healthy standard, it is the government's burden to put in evidence. We've seen nothing so far that would demonstrate the president would have taken the same action, even absent the protected speech of these of the unions who are plaintiffs here. So just to be clear, I was looking through the district court's order. What you're relying on is that page 20 lines nine and 10, the invocation of the national security exception in Section 7103B1 does not necessarily rebut this nexus as the government would have it. And I may have a different pagination that I have a copy printed off the district court's ECF, so that's what I have. I'm sorry about your honor. Do you say page twenty nine, page 20? Oh, I'm sorry. Lines nine and ten. Yes, that's that's correct. And so that comes after, obviously, a discussion of the executive order in the fact sheet as well. And so what the government said below again, the district court's reacting to what was in the briefing below, which what the government said was that 7103B, it says allows the president to exclude agencies based on the two national security criteria on there. And that was it. That's what they said. They did not put in any evidence of this, of their position. And so the district court, again, is having already done the analysis on the evidence that was in the record in terms of the executive order and the fact sheet and finding that they support a finding that this was motivated by retaliatory animus, says that invoking national security, that would not rebut, that's not enough to do this, and then goes on to explain why. I mean, what if the president tomorrow just reissued the order minus the fact sheet? So the president certainly is, if the court strikes down or ultimately if this executive order is struck down, a new executive order could issue, that would be a different case. I think there would still be, you look at the face of the executive order and you say this is, and what it says is, we're invoking the national security exemption that's contained exclusion, that's contained in 7103B, excluding a wide swath of agencies that on their face would, the national security connection would seem to be in doubt. And then draws lines through it that says, but we're going to continue to allow law enforcement, although this is a national security, this is based on national security consideration, law enforcement employees continue to have collective bargaining rights. Collective bargaining continues at these agencies with respect to those employees, except, however, we're going to have this law enforcement exemption, but it's not going to apply to employees at the Bureau of Prisons, who, where all bargaining unit employees are represented by one of my clients, plaintiff AFGE. So there would still be problems on the face of the executive order. It would be a different case if it didn't have an accompanying fact sheet, but, but that, you know, there's certainly the president can issue another executive order, and that will be evaluated on, on its terms. I mean, I guess the difficulty is in an area of national security, the president gets some deference and you kind of are asking, or I'm asking, you know, with, with what jaundiced eye am I to be reviewing these, because one can start scouring something for, you know, discriminatory animus towards a particular point of view, but that's a fairly serious charge to make against the exercise of, you know, kind of core executive authority that's also in this case granted by a statute. And so I, there will be cases where I think that that tension will be very, is going to be difficult and perhaps, and it would then lead to deferring to the considerations. But on this case, we don't have to scour and we don't have to make assumptions or inferences or speculate about what could be motivating the president. The White House chose to publish a facts, a fact sheet about this executive order. We're not taking random statements and trying to put them together. It says more than what you've just outlined. It says other things about national security concerns. So the fact sheet is, is more than just a few sentences criticizing or the, the unions at issue. It's, it says much more. And I, I read your briefs to take the position that the deference that's explained to Trump versus Hawaii doesn't apply here because that was an immigration case. And to me, that wasn't really a satisfying answer because I would think national security concerned have to consider foreign and domestic issues. There can be national security concerns that are domestic that don't relate to immigration. So I don't understand why the court's pretty strong language in Trump versus Hawaii would not have any bearing here. So the issue with applying Trump v. Hawaii here is that this is a first amendment retaliation case. And so... And that was a first amendment establishment case. Yes. And so, but, but it is a different standard. So under rational basis review, which is what was applied there, it is enough if the government puts forward a legitimate justification that could have supported the decision that was made. But under well-established law in this circuit, and including Mount Healthy also from the Supreme Court, that is not enough in a first amendment retaliation case. It is not enough to show that, so even taking this, taking this case, if you go agency by agency and find that the president could have excluded each and every one of these agencies under 7103B, that's not sufficient to defeat the first amendment claim. Because as this court has said multiple times, even legitimate government action is still unlawful if it was motivated by first amendment retaliation. So Trump v. Hawaii is, in addition to being about admission into the country, which is a different standard, the rational basis review standard that it uses is not the standard that governs in a first amendment retaliation case. So your answer to Judge Bress's question a few moments ago touched on the first part of the determination that the agency or the subdivision at issue is a primary function that relates to national security. And I wanted to ask you the same question I ask opposing counsel, which is, what standard do we apply to the president's determination of that first prong A of the statute, and is it a factual determination? What's the import of the enabling act that created the agencies at issue? Yeah, I think that's a statutory interpretation question, because you have to look at, if we were, again, so getting into the statute is more towards our ultra-various claim, which is not the claim that's here before the court. But in terms of how the two prongs are analyzed, we first have to start with the fact that 7103B is an exception to a comprehensive statute in which Congress does explicitly go through and say that it makes a policy decision that collective bargaining is in the public interest. And so statutory, so it is a, you have to interpret that exception as an exception, and therefore not one that can swallow the rule. And then, so the determinations are legal questions of, is this the primary, you know, is this a primary function, and I think Your Honor pointed to there are statutes when these agencies were created as to what Congress envisioned what their function is and set them up, and this is what the purpose of these agencies are. Those are all relevant to the question. So as I understand your remarks of the last several minutes, you're saying that that issue is part of the ultra-various claim, which is not before, it's because the district judge didn't reach that claim. But nonetheless, it also informs the analysis of animus and bias, and because of the inclusion, over-inclusion of agencies that in the plaintiff's view do not have a national security function. I think it's relevant to, so when this Court, in detailing the, you know, in terms of First Amendment retaliation claim, what are the factors that we look at, one of the things that a way in which a plaintiff can show retaliation is to show that the reason given is pretextual. So I think the unprecedented size and scope of the executive order, the jagged lines that are drawn within it are relevant to that factor on the retaliation claim. How much review is there really going to be over that? You know, I mean, the, because the statute has some terms that we could discuss whether they're, you know, subjected to legal interpretation, but at the end of the day, the President has made a decision on some of these things and has greater national security authority than we do. So how deep can that review really be? So I think there is, so this is on the ultra-various claim, there is, you know, I think the Court, there is a role for the Court. This Court has, you know, made that point in the, I think it's the Center for Biological Diversity case that we cited in our brief. And so it is something that the Court can look at. Again, as a statutory interpretation question, looking at this case as an example, the statute cannot be interpreted in a way that either where the exception swallows the rule or just going back to the First Amendment claim that's before this case. One of the arguments the government makes is that in their brief, they essentially admit that the President took First Amendment-protected activity into account. They say this both in their opening brief as well as in their reply brief, but say that's fine because that First Amendment activity is a wholly legitimate consideration for the President to take in determining whether to exclude an agency. That is not what the statute provides. And if it were interpreted in that way, it would run up against the First Amendment. So those are all questions that courts routinely look at, whether how to properly interpret the bounds of a statutory provision and apply it to the situation in front of them. I mean, isn't most anything a union does, couldn't it be characterized as speech in some sense, right? I mean, a union files grievances. We could say that's protected in some sense, but is the President not entitled to look at the grievances and say, these grievances are undermining my ability to promote national security? So it is true that grievances are First Amendment-protected, particularly in this circumstance where, again, the fact sheet says the reason that grievances are negatively viewed here is because they are challenging Trump policies. That's the words used in the fact sheet. So that's not permissible under the statute. Looking at grievances and saying and determining that we're going to eliminate collective bargaining rights for the employees who are represented by this particular union because they are grievances that are challenging Trump policies. So that's making a determination, eliminating rights based on First Amendment-protected activity. And under established law, that's not permissible. That is unconstitutional. I'm going to ask my colleague, do you have any further questions? All right. Thank you very much, Counsel. I'd like to start by addressing what the counsel for the other side says, where the counsel for the other side says that the district court did address the Mount Healthy Standard. What the district court there was addressing was whether the government had rebutted the nexus, the district court said. That nexus is really about whether there is a, whether retaliatory animus was a substantial or motivating factor in the executive order. That's the plaintiff's prima facie case. Even once there is a nexus, then you move to the second stage of the analysis, which is Mount Healthy, where the government gets to show or gets to attempt to show at least that the president would have taken the same action even without the retaliatory animus. That the district court didn't get to at all. I want to also, I think the counsel for the other side at the very end made an assertion that I think is really astounding, which is that the president can never account for the conduct of unions in making this national security determination, and that's simply not true. It is wholly legitimate to consider speech in some instances when the government takes action. So this court in Bocas versus Courtney held that a state assembly could impose security restrictions on a state lawmaker in response to that lawmaker's speech. That's not the retaliatory arrest, retaliatory prosecution context, which plaintiffs assert in their brief is different. This is wholly apart from that. That was a retaliatory, a First Amendment retaliation claim. I think that another case that's important to look at is Holder versus Humanitarian Law Project. There, the Supreme Court addressed the constitutionality of the statute to criminalize providing material support for terrorism. And the Supreme Court there said, this statute doesn't prevent someone from getting up and saying I support a terrorist group, going to the United Nations and advocating for a terrorist group. What the law prevented was providing support to the terrorist group, including through speech. So for example, providing education to the terrorist group on how to advocate for itself. And the Supreme Court said that was legitimate, that the court, that the government, the Congress could consider the effect of that speech on national security and prohibit that speech. It's something similar here. The fact sheet does not say, contrary to what opposing counsel asserted, the fact sheet does not say that the president is taking these actions because the unions have lobbied members of Congress against him, because they have made public statements against him, or because they supported his opponent in the elections. What the fact sheet says is that the actions of the unions in filing grievances, in opposing the president's agenda at these agencies that have a role in national security, that the union's conduct is inconsistent with national security, or they continue to apply the provisions of FSL-MRS would be inconsistent with national security. So if the president wants to order that employees, or an agency wants to order that employees return to work in person, for example, at an agency that deals with national security, or if the president orders that such an agency should be restructured, that some offices are too big and unnecessary, and other offices that deal with national security should be put somewhere, and that might mean restructuring, that might mean laying off people. The unions, in some cases, have opposed that through grievances, through requiring negotiation over these things, and that has prevented the president from carrying out his agenda to improve, to enhance national security, to improve the work of agencies that have as a primary function national security work. And that is a wholly legitimate consideration. The president can absolutely respond to that by saying, by excluding those agencies from FSL-MRS. That's exactly what the statute contemplates. In fact, it's unclear what role this provision in the statute would be doing if the president couldn't consider the effect that unions, the effect that collective bargaining is having on the national security work of the agency. Unless there's additional questions on the merits, I'll just touch on, very briefly, on the jurisdictional inquiry again. Opposing counsel asserted that the FLRA has never considered an executive order like this, excluding agencies. That's not quite right. The Department of Navy case that we cite in our brief, the FLRA case, the FLRA had to construe the bounds of an executive order excluding agencies in order to determine whether it had jurisdiction in a case. It's true that unions have never challenged the validity of an executive order, but the FLRA absolutely has considered the bounds, the effect of an executive order. And there's no reason to think it wouldn't also consider its validity if required to do so in a case in order to determine its jurisdiction. And finally, plaintiffs assert that the pathways to the FLRA are hypothetical. That's absolutely not true. Notably, they fail to mention the one that's clearest, the one that I started with, which is the pending cases before the FLRA, where the FLRA has asked for the party's views on the effect of the executive order. AFSCME, instead of saying, we think the executive order is invalid, so the FLRA should proceed with the case, it urged the FLRA to hold the cases in abeyance pending this litigation. At least once this litigation is resolved, presumably the FLRA will again take up those cases. AFSCME could ask it to do so now at this point, and the FLRA then would have to consider the validity of the executive order in order to determine its own jurisdiction. What is the story with the affirmative litigation in Texas and I think Kentucky that the government filed against the unions? So those have been dismissed. The government has not pursued appeal of those decisions. I mean, is that not in conflict with the position being advocated for today? The government's cases were founded on a different theory, which was premised on the theory that the executive order was valid and then asked the subsequent question of whether the government could terminate the collective bargaining agreements. And so it was a different theory, but whether or not there was jurisdiction in those cases is really beside the point because the district court can't assert jurisdiction here through some theory of estoppel. Unless there's further questions, we ask that the court reverse the preliminary injunction below. All right. Thank you, counsel. Thanks to both of you for your appearances in person today. We appreciate that. This matter is submitted and we're done for the day, this panel. Thank you. All rise.
judges: OWENS, BADE, BRESS